IN THE UNITED STATES DISTRICT COURT
OF KANSAS

JUSTIN KNAPP, RANDI KNAPP,  )
CHARLES HAYDEN, and  )
PAMALA HAYDEN,  )
 )
  Plaintiffs,  )
 )
vs.  ) Case No. 2:24-cv-02319
 )
AMAZON.COM SALES, INC.,  )
**SERVE:**  )
Corporation Service Company,  )
1100 SW Wanamaker Road, St. 103,  )
Topeka, Kansas 66604,  )
 )
AMAZON.COM SERVICES, LLC,  )
**SERVE:**  )
Corporation Service Company,  )
1100 SW Wanamaker Road, St. 103,  )
Topeka, Kansas 66604,  )
 )
ASTROAI CORPORATION,  )
**SERVE:**  )
Registered Agents, Inc.,  )
100 N Howard Street, St. R.,  )
Spokane, Washington 99201,  )
 )
MAIYI TECHNOLOGY CO., LTD.,  ) **JURY TRIAL DEMANDED**
**SERVE:**  )
Via The Hague Convention,  )
 )
  Defendants.  )

## <u>COMPLAINT</u>

For their causes of action against the defendants, the plaintiffs state and allege

the following.

## I.    The parties

1.    At all relevant times, plaintiffs Justin Knapp and Randi Knapp have been spouses, residing together and with their family in Overland Park, Kansas.

2.    At all relevant times, plaintiffs Charles Hayden and Pamala Hayden have been spouses, residing together in Overland Park, Kansas.

3.    At all relevant times, defendant Amazon.com Sales, Inc. has been a Delaware for-profit corporation with a principal place of business in Seattle, Washington. ASI has committed tortious acts in Kansas. ASI can be served with process by serving its registered agent identified above.

4.    At all relevant times, defendant Amazon.com Services, LLC has been a Delaware LLC with a principal place of business in Seattle, Washington. ASL has committed tortious acts in Kansas. ASL can be served with process by serving its registered agent identified above.

5.    At all relevant times, AstroAI has been a Washington for-profit corporation with a principal place of business in Garden Grove, California. AstroAI has committed tortious acts in Kansas. Astro AI can be served with process by serving its registered agent identified above.

6.    At all relevant times, Maiyi Technology Co. has been a Chinese company with a principal place of business in Chongqing, China. MTC has committed tortious acts in Kansas. MTC can be served via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.

7.      The case pertains to a defective and unreasonably dangerous miniature refrigerator that was sold to Justin and Randi Knapp by Amazon.[1] Amazon lists the "brand" of the appliance as "AstroAI." It can be found in Amazon's "AstroAI Store" on Amazon's website. AstroAI maintains a website.[2] It advertises and sells the same miniature refrigerator on its website.[3] The name on the miniature refrigerator is "AstroAI." "AstroAI" is on the owner's manual for the subject miniature refrigerator. The miniature refrigerator was designed by Zhuo Chen of AstroAI Industrial Design Center for Maiyi Technology Co. Here is how the company information is listed on AstroAI's website:

**Company Information**

| CHINA | United States |
|---|---|
| **Maiyi Technology**<br>No.19-13, No. 53 Xiejiawan Main Street, Jiulongpo District, Chongqing, China | **AstroAI**<br>7423 Doig Dr, Garden Grove, CA, US |

## II.    Subject matter jurisdiction

8.      This Court has subject matter jurisdiction over the claims here pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and involves citizens of different states.

---

[1] Amazon.com: AstroAI Mini Fridge, 4 Liter/6 Can AC/DC Portable Thermoelectric Cooler Refrigerators for Skincare, Beverage, Home, Office and Car, ETL Listed (White : Automotive

[2] AstroAI | For All of Life's Adventures - AstroAI US

[3] 4L Mini Fridge | Small Refrigerator | Mini Fridges - astroai.com

### III.    Personal jurisdiction

9.    The defendants designed, tested, manufactured, distributed, advertised and/or sold in the stream of commerce a defective and unreasonably dangerous AstroAI miniature refrigerator to Justin and Randi Knapp in Overland Park, Kansas. The miniature refrigerator caused a house fire in Overland Park, Kansas while being used precisely as intended by the defendants.

10.    This Court has general and specific personal jurisdiction over each of the defendants for these reasons:

a.    They knowingly, intentionally, and deliberately placed the subject miniature refrigerator into the stream of commerce under circumstances such that defendants should reasonably anticipate being haled into court in Kansas to answer claims about the failure of their product in Kansas;

b.    The subject miniature refrigerator was first sold and put in the stream of commerce in Kansas;

c.    Defendants place their products into the stream of commerce by targeting Kansas consumers through various websites;

d.    The Amazon defendants have been parties in many cases when they have come into the courts of Kansas without claiming a lack of jurisdiction, to answer and prosecute claims and lawsuits;

e.  Each of the defendants has purposefully availed themselves of the jurisdiction of the courts of Kansas by designing, manufacturing, testing, marketing, and selling products to Kansas residents;

f.  Each of the defendants have a regular plan for the distribution of its products in Kansas hoping to achieve a commercial benefit from the sale of products in Kansas;

g.  Each of the defendants engage in national marketing of their products that intentionally pervade into the Kansas market;

h.  Each of the defendants target marketing specific to Kansas;

i.  Each of the defendants oversee aspects of their product warranty process from within Kansas;

j.  Each of the defendants send recall notices related to safety defects into Kansas;

k.  Each of the defendants have an interactive website accessible in Kansas through which products are sold to Kansas residents and businesses;

l.  Each of the defendants have thousands, if not millions, of customers in Kansas;

m.  Each of the defendants derive significant profits each year from sales of products in Kansas;

n.  Each of the defendants hold patents and/or trademarks which they demand must be honored in Kansas;

o.    Each of the defendants have committed negligent and tortious acts both inside and outside of Kansas that caused damages in Kansas;

p.    The claims here are connected with and/or relate to the defendants' extensive contacts with Kansas;

11.    Each of the defendants had minimum contacts with Kansas and are doing business in Kansas, for example, by entering into contracts; sending written and digital communications; maintaining websites; advertising; selling products and product warranties; and committing torts in the State of Kansas.

12.    The claims asserted here arise from each of the defendants' contacts and business in the State of Kansas.

13.    K.S.A. § 60-308(b)(1) establishes specific personal jurisdiction over each of the defendants in the following respects:

a.    Each defendant has transacted business in Kansas, as explained above [60-308(b)(1)(A)];

b.    Each defendant has committed tortious acts in Kansas, including, but not limited to the design, manufacture, testing, marketing, distribution, and sale of the miniature refrigerator at issue [60-308(b)(1)(B)];

c.    Each defendant caused damages to persons and property in Kansas because each were engaged in the sale of products in Kansas that were used or consumed in Kansas in the ordinary course of trade or use, as explained above. [60-308(b)(1)(G)].

14.    K.S.A. § 60-308(b)(2) establishes general personal jurisdiction over each of the defendants because, as explained above, each of the defendants have had substantial, continuous, and systematic contact with Kansas that supports jurisdiction consistent with the constitutions of the United States and of Kansas.

15.    ASI and ASL are both registered to do business in Kansas. This Court has consent jurisdiction over both.

## III.    Venue

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and the doctrine of *lex loci* because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in Kansas.

17.    Venue for this action is proper in this Court because the house fire caused by the defective and unreasonably dangerous miniature refrigerator occurred in Kansas.

## IV.    Background facts

18.    On and before March 14, 2024, Charles Hayden and Pamala Hayden owned the house located at 16625 Hadley Street, Overland Park, Kansas 66085.

19.    On and before March 14, 2024, Justin and Randi Knapp leased the house located at 16625 Hadley Street, Overland Park, Kansas 66085 from Charles Hayden and Pamala Hayden.

20.    Before March 14, 2024, Justin and Randi Knapp purchased a new AstroAI miniature refrigerator from Amazon. The product was shipped by Amazon to the house located at 16625 Hadley Street, Overland Park, Kansas 66085.

21.    AstroAI's website represents that the miniature refrigerator "is a small fridge to store foods, drinks, beer, snacks, breast milk, makeup, and skincare. It is ideal to use anywhere in your bedroom, office, dorm, travel, boating, camping and so on . . . ."[4]

22.    Before March 14, 2024, and unbeknownst to the plaintiffs, the defendants had received hundreds of complaints related to the AstroAI product that strongly suggested the product was an electrical and fire hazard. Amazon's website has at least fifteen reviews reporting that the product was smoking. And it has at least two dozen reviews that mention "fire." Here are a few examples:



kingbeyfan
★★☆☆☆ **Great Mini Fridge**
Reviewed in the United States on May 27, 2020
Color: White | **Verified Purchase**

This was one of the best things I'd purchased in a while. Now if I'm thirsty I no longer have to go to the kitchen for a cold drink.

Since my original post I've been through 2 of these mini fridges. Both of them stopped getting cold and almost caught on fire. I kept smelling something electrical and thought it was an outlet... NO! It was the mini fridge BOTH TIMES. They replaced the first one very fast, but the replacement went up about a month later. I didn't even both asking for a 3rd replacement...

Helpful | Report

Bryan
★☆☆☆☆ **Do not buy!!!! Started smoking**
Reviewed in the United States on December 17, 2023
Color: Black | **Verified Purchase**

Worked fine for 3 months. Out of no where, fan stopped and I smelt something burning,. Look over and there is smoke coming out of the back. I'm so luck I was home and caught it as it happened. DO NOT BUY!

2 people found this helpful

Channing
★☆☆☆☆ **Electrical fire hazard!**
Reviewed in the United States on April 28, 2023
Color: Black | **Verified Purchase**

Had this mini fridge since March 2022 it is now April 2023. The fridge worked great up until yesterday when I noticed an odd smell in my room. Today the smell was worse and began to smell like Bruning plastic and chemicals. After investigation, I found the culprit to be this mini fridge. Luckily it never got to the point of a fire, but very well could have been. The pcb board has visible signs of over heating and there is plenty of water build up inside the cooling unit in the back



7 people found this helpful

---

[4] <u>AstroAI 4 Liter/6 Can Portable Mini Fridge,Small Refrigerator,Mini Refrigerator, AC/DC, White Color</u>

 BBice

★☆☆☆☆ **Good for a little over a year. Died a smoky death.**
Reviewed in the United States on May 16, 2023
Color: White | **Verified Purchase**

Good while it lasted. The switch on the back which changes from hot/cold/off became very hard to switch. I only used this to keep soda drinks cold when people visited our guestroom. A couple of weeks ago I smelled something strange. After investigating, I found that the smell was coming from the refrigerator. The switch was discolored and the sticker around the switch was bubbled up and it would no longer turn on at all. DANGER! DO NOT BUY!

4 people found this helpful

 Amazon Customer

★☆☆☆☆ **Was smoking & almost caught on fire**
Reviewed in the United States on June 18, 2023
Color: Teal | **Verified Purchase**

We had to have the fire department here this morning, after the mini fridge was smoking & had a strong burning smell. Do not buy! Could've burnt our house down if we didn't catch it.

| Helpful | Report |

 Meredith Taylor

★☆☆☆☆ **Fire Hazard**
Reviewed in the United States on April 4, 2021
Color: White | **Verified Purchase**

This fridge worked great for the first few months, but then the cooling feature stopped working. One day, I can home from work and my whole house smelled like burning plastic. It turned out this fridge was severely overheated, and if I was gone any longer my house would have probably burnt down. I would recommend spending the extra money for a quality skincare fridge if you really want one!!

| Helpful | Report |



 Erica Lynne

★☆☆☆☆ **Almost burnt my house down!!!**
Reviewed in the United States on May 20, 2021

My daughter received this for Christmas but just started using it. This morning I went into her room to smell something like plastic burning and this is what we found. Barely used for a couple of weeks and it could've literally caught my house on fire. I bought one for my son also and I will be attempting to return both...

Images in this review





Brandy Thompson

★☆☆☆☆ **Top switch melted.**

Reviewed in the United States on November 4, 2021

Delivered July 1. November 3 plug melted and could've burned my daughters room down. Very disappointed and cannot return. Plus it's a fire hazard. Would not recommend.

Images in this review





Ann

★☆☆☆☆ **Potential Fire Hazard**

Reviewed in the United States on January 21, 2021

I purchased in July. It didn't keep things as cool as I'd like, but I was okay with that. Six months later, I noticed a burning smell coming from the fridge. I attempted to turn it off, and the switch was melted from the inside. I do not reccoment this product. It is an expensive fire hazard.

Images in this review

  

Mathew

★☆☆☆☆ **Back switch melted**

Reviewed in the United States on November 2, 2022

Color: Blue | **Verified Purchase**

While this fridge lasted 2 years, recently noticed smell of plastic burning and upon inspection noticed the back switch had begun to melt. Be warned for potential fire hazard if you keep this plugged in.



2 people found this helpful

 Abi

★☆☆☆☆ **It sparked and nearly caused a fire incident**

Reviewed in the United States on May 30, 2023

Color: White | **Verified Purchase**

I plugged it into a surge protector socket and it still sparked and let out lot of smoke.

One person found this helpful

 Ashley Scholma

★☆☆☆☆ **Got very hot**

Reviewed in the United States on December 10, 2022

Color: Teal | **Verified Purchase**

This fridge worked amazing for a year. Last week it started to smell like an electrical burn. If I wouldn't have been there, it could have started a fire.

Helpful | Report

 Spike

★☆☆☆☆ **Junk**

Reviewed in the United States on July 10, 2021

Color: Black | **Verified Purchase**

Only lasted 4 months and damn near caught fire. Switch in back is all melted and nothing happens inside

Helpful | Report



 Jess G.

★☆☆☆☆ **Almost caught fire**

Reviewed in Canada on May 20, 2022

Didn't realize this had stopped working till the other day so I unplugged it to clean the fan and noticed this burn mark, than goodness it didn't catch fire while me and my children were asleep. I'm so disappointed I loved the fridge in the beginning but now I'm shocked to see this.

Images in this review



11



 Anderson7175

⭐☆☆☆☆ **Fire Hazard! Burned out switch, could have caused a fire in my house.**

Reviewed in the United States on September 7, 2022

Gifted this mini fridge for Christmas this past year. It was mediocre on keeping things cold, it would often freeze up in the back so I had to turn it off, let it thaw, then turn it back on. Defeats the purpose.

Anyways I noticed a could weeks back it wasn't doing anything so I tried switching it to off again the the switch wouldn't budge. Turns out it had melted! There were burn marks under the switch and on the unit itself. It could have started a fire in my house!

Images in this review

  



Cristina

⭐☆☆☆☆ **SAFETY HAZARD: FIRE**

Reviewed in the United States on January 11, 2023

I've had it for two years. It barely kept my makeup cold but I used I kept it for my roller because it still was cool enough to use in the morning. THANKFULLY my husband and I were sitting at my vanity talking before work when I noticed smoke. IT CAUGHT FIRE!!!!!! Lucky I noticed it just as it started to smoke and was able to unplug it and toss it outside. I was getting ready to leave for work and leave my two dogs behind. I could have lost everything.

Images in this review

 



 Amazon Customer

★☆☆☆☆ CAUGHT ON FIRE

Reviewed in the United States on May 9, 2024

Save your home and your life and don't buy this product! I had for barely a year and only used to store my babies bottled milk and it CAUGHT ON FIRE! Thank God we were home or we could have lost everything! The electrical burn smell still lingers in our room over a month later. The company ignored me for over a month when I brought my concerns to their attention then proceeded to insult me by offering me a "tire pressure gauge" when I declined their replacement refrigerator. A direct quote from their "management" team, Jonas "we are willing to provide you with a choice of either an air pump or a car jump starter, free of charge". Oh boy. What generosity since their product almost killed my family!!! These products and their negligence will absolutely kill someone someday!

Images in this review





 Rebecca

★★★☆☆ Burt and broken after 8 months

Reviewed in Canada on January 26, 2021

I've had this fridge for about 8 now and it did it's job. But yesterday I went to get my face cream out and I noticed the fridge wasn't cold inside. I turned it around to find that the back of it was semi burnt and the on/off switch was stuck. I'm in shock because I'm thinking what if it caused a fire. I'm not sure if it's past the return time but I would love to get an explanation. I loved the fridge. It was super cute and worked as expected until yesterday. I'm tempted to buy another one from this company but I'm worried this might happen again.

Images in this review

  



 SteveC

⭐☆☆☆☆ **Burned out - Fire hazard?**

Reviewed in the United States on October 21, 2022

I bought this mini fridge primarily to use while traveling in our van. We used if for this purpose several times and it did the job. I then decided it would be good to have a beer fridge in my mancave, so that I can grab a cold one, while watching sports. Well, after a few months of use, it simply stopped working. Looking at the back, it is obvious that it has burned out. Big disappointment. I guess you get what you pay for.

Images in this review





 Nancy

⭐☆☆☆☆ **Lasted 18 months**

Reviewed in Canada on June 22, 2023

Used for bottled water. Plugged in for 18 months. On cool side only. Looking at the photo, noticed water on the table. Obviously it failed. Lucky it didn't cause a fire.

Won't be buying this ever again

Images in this review





Rachael Chandler

★★★☆☆ **It lasted until Jan 2023**

Reviewed in the United States on January 4, 2023

Color: White | **Verified Purchase**

I loved this thing for my bedroom. I recently broke my foot and have not been able to get around. Having this by me helped out. Unfortunately, last night there was an electrical burning smell and the on off button melted. It was impossible to turn off without unplugging. I loved this product. I bought it in 2020, but I am not sure I think it is safe if not being monitored.

One person found this helpful

| Helpful | | Report |

Amanda J Jarvis

★☆☆☆☆ ⚠ **WARNING DANGER FIRE HAZARD**

Reviewed in Canada on May 14, 2024

Color: Blue | **Verified Purchase**

THIS EXACT fridge is currently under review from our fire investigation from our house fire that claimed our home and pets life. Don't buy it and if you have throw it out !!! Now !

2 people found this helpful

Report

23.     Dozens more reviews document and report to the defendants serious electrical problems with the AstroAI miniature refrigerator.

24.     On information and belief, Astro AI is obtaining and publishing on its own website some, but not all, of the reviews by consumers who purchased the AstroAI miniature refrigerator. Amazon's website has over 20,000 reviews of this product. Those reviews range from one to five stars.



AstroAI has seventy one reviews on its website.

15



Some of the reviews appear to be identical. Here is a review from Amazon's website.



Here is the identical review from AstroAI's website.



AstroAI's website does not list the one- and two-star reviews of this product that can be found if one searches Amazon's website. AstroAI is not sharing negative reviews with its customers, despite its actual knowledge they exist on Amazon's website. AstroAI is cherry picking only the good reviews from Amazon's website.

16

25.    On information and belief, the defendants have received hundreds of complaints and contacts from consumers about serious electrical problems with the AstroAI miniature refrigerator.

26.    The defendants, who manufactured, imported, distributed, and sold the defective and unreasonably dangerous AstroAI miniature refrigerator, each had a legal obligation under federal law to immediately report these complaints and reports about the product to the United States Consumer Product Safety Commission as the product clearly could create a substantial risk of injury to consumers, creates an unreasonable risk of serious injury or death, and fails to comply with applicable consumer product safety rules and with other rules, regulations, standards, or bans under the Consumer Product Safety Act. The failure to fully and immediately report this information may lead to substantial civil or criminal penalties. The CPSC staff's advice is "when in doubt, report."

27.    On information and belief, none of the defendants have reported any of the well-documented electrical problems with the AstroAI miniature refrigerator to the CPSC.

28.    Ignoring the reports of electrical problems with the AstroAI miniature refrigerator, the Amazon defendants represented the following to plaintiffs and other potential consumers:

a.    "The AstroAI mini fridge is a small fridge to store [ ] makeup and skincare. It is ideal to use anywhere in your bedroom, office, dorm, travel, boating, camping and so on . . . ."

17

b.      "The removable shelf makes small items like breast milk, skincare, cosmetic [ ] easy to separate, great gift for women and men . . . ."

c.      "You can connect the compact refrigerator to a 100-120V home power supply, or you can connect to a 12V car power supply . . . ."

d.      ETL certification.[5]

29.    AstroAI makes similar representations on its website.

30.    On and before March 14, 2024, the Knapp's miniature refrigerator was being used in a bedroom for makeup and skincare products, as recommended by the defendants. It was plugged into a standard wall outlet as instructed by the owners' manual for the product, which states "[t]o avoid the risk of fire or electric shock, please plug the fridge into an exclusive grounded outlet." Nothing else was plugged into the outlet. No extension cord was used. All the instructions and warnings for the product were followed and heeded. Before March 14, 2024, the product seemed to function fine.

31.    On March 14, 2024, the subject AstroAI miniature refrigerator malfunctioned and started an electrical fire in an upstairs bedroom.

32.    The Knapp family was out of town when the fire started.

33.    At around noon on March 14, 2024, smoke was noticed by neighbors and 911 was called.

34.    Fire crews were on site within minutes of the 911 call.

---

[5] ETL stands for Electrical Testing Laboratories.

35.    When the fire crews arrived, smoke and fire were seen through the window of the bedroom where the miniature refrigerator was being used. This is a picture of the front of the house and the window of the room where the miniature refrigerator malfunctioned and started a fire.



Here is a picture looking from the inside of the house through the same window after the fire was suppressed and it was safe for firefighters to go inside the house.



19

36.     After the fire was extinguished, fire investigators determined that the fire was electrical and was caused by the AstroAI miniature refrigerator.









 **OVERLAND PARK FIRE DEPARTMENT**

**FIRE INVESTIGATION REPORT**

FIRE INVESTIGATION
12401 Hemlock
Overland Park KS 66213
Office 913 888 6066

**ACCIDENTAL**

**Incident # 24-0740099**
**BATS #: 1507294**

**SCOPE OF ASSIGNMENT:**
On March 14, 2024 at approximately 1200 hours I responded to a structure fire at approximately 12:00 PM at 16625 Hadley Street Overland Park, KS in a fire suppression capacity assigned to RE45. After suppression activities ceased, the Incident Commander BC47B Roberts requested I conduct an *origin and *cause investigation involving a two story, single family home structure.

**INVESTIGATION:**

I responded to 16625 Hadley Street Overland Park, KS and began the examination of the fire scene. The investigation was conducted while employing a scientific methodology. Specifically; *The Basic Methodology of Fire Investigation and a Systematic Approach* as discussed in the 2021 edition of NFPA 921; "A Guide for Fire and Explosion Investigations" and the 2022 edition of NFPA 1033; "Standard for Professional Qualifications for Fire Investigator".

My opinions and conclusions contained in this report have been determined to a reasonable degree of certainty within the fire investigation profession. Each is based on the examinations conducted, the evidence and information known as of the production of this report and the analysis of the same. Any new or discovered evidence or information may require the conclusions and opinions to be re-evaluated.

Analysis of all the evidence and information revealed during this examination provided sufficient evidence that the probable competent ignition source had been AstroAI Refrigerator.

37.    The fire, smoke, and efforts to extinguish the fire did hundreds of thousands of dollars in damage to the home, the furnishings, and the personal property of the Knapp family.

38.    The house remains uninhabitable.

39.    The Knapp family cannot live in the house in its current condition. They have been required to lease a home while their house is being repaired.

40.    The Knapp family is not at fault for the fire.

41.    The sole cause of the fire was the defective and unreasonably dangerous AstroAI miniature refrigerator.

42.    As a direct and proximate result of the defective and unreasonably dangerous miniature refrigerator causing an electrical fire, the plaintiffs have been damaged in the following respects:

   a.    The house suffered hundreds of thousands of dollars in damages;

   b.    The house requires hundreds of thousands of dollars in repairs;

22

c.    Personal property (furniture, clothing, linens, furnishings, consumer products, collectibles and other property) was damaged and destroyed;

d.    The Knapp family needed to find alternative living arrangements;

e.    The Knapp family needed to replace (and still needs to replace) property that was damaged or destroyed;

f.    The Knapp family has suffered significant emotional trauma and distress; and

g.    The Knapp family has incurred fees, costs, and expenses it otherwise would not have incurred but for the defective and unreasonably dangerous miniature refrigerator causing the house fire.

43.    The economic loss doctrine does not apply to the claims here because the defective and unreasonably dangerous AstroAI miniature refrigerator caused extensive damage to real and personal property. *Zone Five, LLC v. Textron Aviation, Inc.*, No. 20-1059-DDC, 2023 WL 3478057, at *5 (D. Kan. May 16, 2023); *Knobbe v. Deere & Co.*, No. 19-1248-EFM-ADM, 2019 WL 6307723, at *1 (D. Kan. Nov. 25, 2019) ("[T]he economic loss doctrine does not bar a plaintiff from recovering for property damage, including damage to the product at issue, on product liability claims") (citation omitted).

44.    The defendants' acts and omissions described above show that they acted with acted toward the plaintiffs willfully or wantonly such that a punitive

damage award against each is necessary to punish them and to deter them and others from similar misconduct again.

45.    Certain allegations below are made in the alternative.

## V.    Count I: 402A strict liability against all defendants

46.    Plaintiffs incorporate here all of the allegations above in ¶¶ 1-45.

47.    At all relevant times, the defendants were in the business of designing, manufacturing, testing, marketing, and distributing miniature refrigerators like the subject AstroAI product in the United States, including the State of Kansas.

48.    Importers of consumer products like the subject AstroAI miniature refrigerator are "manufacturers" under the law. 15 U.S.C.A. § 2052(a)(11).

49.    AstroAI held itself out as the manufacturer of the subject miniature refrigerator. On information and belief, the actual manufacturer was Maiyi Technology.

50.    The Amazon defendant cannot avail themselves of K.S.A. § 60-3306 because:

a.    They had knowledge of the defective and dangerous condition of the AstroAI miniature refrigerator;

b.    They had and assumed duties to test and analyze consumer products for defective and dangerous conditions, they breached those duties, and had they not breached those duties, they could have discovered the defective and unreasonably dangerous condition of the subject AstroAI miniature refrigerator simply by exercising due care;

24

c. As a direct importer of the product, they are both a "manufacturer" under federal law and the preemption doctrine;

d. The Chinese manufacturer may not be subject to service of process under the laws of the State of Kansas; and

e. Even if the Chinese manufacturer is subject to proper service, it is not reasonably certain any judgment the plaintiffs might obtain against the manufacturer could be satisfied by the manufacturer alone.

51. The defendants placed the subject AstroAI miniature refrigerator into the stream of commerce in the United States and, more specifically, the State of Kansas.

52. At the time it was placed into the stream of commerce by the defendants, the subject AstroAI miniature refrigerator was defective and unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics.

53. At the time it was placed into the stream of commerce by the defendants, the subject AstroAI miniature refrigerator was defective and unreasonably dangerous in design, manufacture, and warnings. In particular:

a. The electrical components of the product were insufficiently designed, tested, manufactured, and assembled to safely sustain the voltage needed to power the product;

25

b.      The electrical components were improperly designed, tested, manufactured, and assembled such that they were susceptible to shorting out and starting fires;

c.      The miniature refrigerator was likely to cause and did cause a house fire due to its improper design, testing, manufacture, and assembly;

d.      The defendants' warnings and instructions regarding subparagraphs (a) – (c) were insufficient; and

e.      No post-sale warnings were given to the plaintiffs and others who purchased the product after defendants began getting notice and reports of electrical problems and fires caused by the product.

54.     The subject AstroAI miniature refrigerator was used as intended by the defendants. It was not misused. It was not altered. It was not abused.

55.     At the time of the fire, the subject AstroAI miniature refrigerator was in the same condition it was in when defendants put it in the stream of commerce.

56.     The defective and unreasonably dangerous condition of the subject AstroAI miniature refrigerator was not open and obvious.

57.     The house fire and the damages and injuries suffered by the plaintiffs were reasonably foreseeable to the defendants.

58.     The defective and unreasonably dangerous conditions of the subject AstroAI miniature refrigerator caused or contributed to cause the damages and injuries the plaintiffs seek to recover in this case.

WHEREFORE, the plaintiffs seek judgment in their favor, and against the defendants, on Count I of this complaint, for damages in excess of $75,000, for punitive damages, for pre- and post-judgment interest, for their fees, costs, and other such relief that the Court deems appropriate.

## VI.    Count II: Negligence against all defendants

59.    Plaintiffs incorporate here all of the allegations above in ¶¶ 1-58.

60.    The defendants knew or should have known that the subject AstroAI miniature refrigerator would be used in bedrooms of homes for storing makeup and skincare products. The defendants promoted and encouraged this kind of use of the product and represented it was fit and appropriate for that use.

61.    As manufacturers and sellers of the subject AstroAI miniature refrigerator, each of the defendants had a duty to use ordinary care in the design of the product so that it would be reasonably safe for the use for which it was intended, or which can reasonably be anticipated. In exercising this duty, ordinary care must be exercised by the defendants to design, manufacture, advertise, and sell the product in a way that the product is reasonably safe for the ordinary consumer who possesses knowledge common to the community as to the product's characteristics. The defendants breached these duties. The defendants failed to exercise ordinary care. The defendants were negligent.

62.    The defendants, as manufacturers and sellers of the subject AstroAI miniature refrigerator had a duty to make a reasonable inspection of the product for

any defect. The defendants breached those duties. The defendants failed to exercise reasonable case. The defendants were negligent.

63.     The defendants as manufacturers and sellers of the subject AstroAI miniature refrigerator had a duty to make such tests for defects as are reasonably necessary to assure safety of the product manufactured. The defendants breached those duties. The defendants failed to exercise reasonable case. The defendants were negligent.

64.     The defendants as manufacturers and sellers of the subject AstroAI miniature refrigerator which they know, or by the exercise of ordinary care should know, is potentially dangerous to users thereof, had a duty to give adequate warnings of such danger where injury to a user thereof can be reasonably anticipated if an adequate warning is not given. The duty to warn includes a duty to provide a warning to dangers inherent in use and the duty to provide adequate instructions for safe use. The duty to warn includes post-sale warnings. The defendants breached those duties. The defendants failed to exercise reasonable case. The defendants were negligent.

65.     The acts and omissions of the defendants described above caused or contributed to cause the damages and injuries the plaintiffs seek to recover in this case.

WHEREFORE, the plaintiffs seek judgment in their favor, and against the defendants, on Count II of this complaint, for damages in excess of $75,000, for punitive damages, for pre- and post-judgment interest, for their fees, costs, and other such relief that the Court deems appropriate.

## VII.   Count III: Kansas Consumer Protection Act against all defendants

66.   Plaintiffs incorporate here all of the allegations above in ¶¶ 1-65.

67.   The defendants are "suppliers" as defined by K.S.A. § 50-624(l).

68.   Justin and Randi Knapp are "consumers" as defined by K.S.A. § 50-624(b).

69.   The purchase of the subject AstroAI miniature refrigerator was a "consumer transaction" as defined by K.S.A. § 50-624(c).

70.   The subject AstroAI miniature refrigerator is "property" as defined by K.S.A. § 50-624(j).

71.   Before purchasing the subject AstroAI miniature refrigerator, plaintiffs engaged in online research. They compared different makes and models of similar products. They relied on the representations and statements by the defendants on their websites, on the product itself, and in materials provided with the product. But for those representations and statements by the defendants, plaintiffs would not have purchased and used the product.

72.   The defendants engaged in the following deceptive acts and practices in violation of K.S.A. § 50-626 when the sold the subject AstroAI miniature refrigerator:

a.   Made representations knowingly or with reason to know that the product had characteristics, uses, and benefits that it did not have;

b.   Made representations knowingly or with reason to know that the product was of a particular standard, quality, grade, style, or model, when in fact it differed materially from the representations;

c.    Made representations knowingly or with reason to know that the property had uses, benefits, or characteristics when in fact the product did not;

d.    Willfully used exaggeration, falsehoods, innuendos, and ambiguity as to material facts regarding the safe use the quality of the product; and

e.    Willfully failed to state a material fact, or willfully concealed, suppressed, or omitted material facts regarding the safe use and quality of the product.

73.    The defendants engaged in the following unconscionable acts and practices in violation of K.S.A. § 50-627 when the sold the subject AstroAI miniature refrigerator:

a.    They knew or had reason to know that plaintiffs were unable to receive a material benefit from the subject of the transaction;

b.    They made misleading statements of opinion regarding the proper use and quality of the product on which plaintiffs were likely to rely, and did rely, to their detriment.

74.    The acts and omissions in the preceding two paragraphs, on which the plaintiffs relied, were made by the Amazon defendants on their website, from which the subject AstroAI miniature refrigerator was purchased by plaintiffs in November 2022; from AstroAI's website at or about the same time period; in the instruction manual and literature that accompanied the product after it was purchased; in the warnings provided with the product; and in on-product instructions and warnings. In

30

purchasing and using the product, plaintiffs reasonably relied on all the representations and statements made on Amazon's website, AstroAI's website, in the instruction manual and literature that accompanied the product after it was purchased, the warnings provided with the product, and the on-product instructions and warnings.

75.    The plaintiffs are aggrieved consumers and suffered damages as a direct and proximate result of the defendants' acts and omissions in violation of the KCPA. They bought a product that was represented by the defendants to be of a certain quality and appropriate for certain uses. While being used as expected by the defendants, after plaintiffs followed all instructions and heeded all warnings, the defective and unreasonably dangerous AstroAI miniature refrigerator caused a house fire resulting in hundreds of thousands of dollars in damages to real and personal property, an uninhabitable home, and the other damages sought here. Before that fire, the defendants had extensive actual knowledge of other electrical malfunctions and fires caused by identical products.

76.    More specifically, the defendants intentionally and deliberately violated the KCPA by misrepresenting, marketing, and selling the AstroAI miniature refrigerator through knowingly deceptive and misleading websites. In so doing, the defendants represented that the product had sponsorship, approval, characteristics, uses, or benefits that it does not have [K.S.A. § 50-626(b)(1)(A)]; represented that the product is of particular standard, quality, grade, style or model, when in fact the product is of another that differs materially from defendants' representations [K.S.A.

31

§ 50-626(b)(1)(D)]; and engaged in the willful failure to state material facts, or the willful concealment, suppression or omission of material facts regarding the product [K.S.A. § 50-626(b)(3)].

77. Under the KCPA, plaintiffs have a right to recover their attorney's fees.

78. The acts and omissions of the defendants described above caused or contributed to cause the damages and injuries the plaintiffs seek to recover in this case.

WHEREFORE, the plaintiffs seek judgment in their favor, and against the defendants, on Count III of this complaint, for damages in excess of $75,000, for punitive damages, for pre- and post-judgment interest, for their fees, costs, and other such relief that the Court deems appropriate.

## VIII. Count IV: Tort of outrage against all defendants

79. Plaintiffs incorporate here all of the allegations above in ¶¶ 1-78.

80. Amazon's website contains dozens of reports of electrical problems, overheating, and fires with the subject miniature refrigerator. AstroAI cherrypicked the good reviews for its own website and ignored the bad reviews, including those set forth above. Despite their actual knowledge of these problems, the defendants continued selling the product. They did so intentionally or in reckless disregard for the plaintiffs and other purchasers of the miniature refrigerator.

81. The conduct of the defendants was extreme and outrageous. As the adverse reports continued to pile up, the defendants kept selling this defective and unreasonably dangerous product. It was only a matter of time before one of these

products malfunctioned and caused a catastrophic house fire. Not only did that happen here, it has happened to another family and its pet. But for the grace of God, there have been no injuries or deaths of people yet, to plaintiff's knowledge. Under these circumstances, the conduct of the defendants is so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society. Product manufacturers and sellers should not knowingly send defective and unreasonably dangerous products to the homes of consumers and encourage consumers to use them in their bedrooms. That is why Congress passed the Consumer Product Safety Act. That is why the defendants were required to report all of the adverse complaints regarding the AstroAI miniature refrigerator to the Consumer Product Safety Commission. Yet they did not report those adverse complaints. As such, they are likely subject to significant civil and criminal penalties. Certainly, failing to adhere to laws, rules, and regulations developed for the safety of American consumers and moreover, conduct that can result in significant civil and criminal penalties must be regarded as atrocious and intolerable in a civilized society.

82.    The conduct of the defendants caused or contributed to cause extreme and severe mental distress to the plaintiffs. The Knapp family lost their home and many of their belongings, including items that cannot be replaced. While they feel lucky and blessed no one was hurt when the miniature refrigerator started the fire, they have nightmares about what might have happened if the fire started in their daughter's bedroom, at night, while they all were asleep. Mr. and Mrs. Hayden, who

are retirees, lost a significant part of their retirement portfolio and are losing rent while the house is being repaired. They are paying for the repairs to the house out of their own pocket. None of this would have occurred but for the defective and unreasonably dangerous AstroAI miniature refrigerator, a product for which the defendants had been receiving actual notice of potentially deadly flaws for years prior to the fire at issue here.

83.   The acts and omissions of the defendants described above caused or contributed to cause the damages and injuries the plaintiffs seek to recover in this case.

WHEREFORE, the plaintiffs seek judgment in their favor, and against the defendants, on Count IV of this complaint, for damages in excess of $75,000, for punitive damages, for pre- and post-judgment interest, for their fees, costs, and other such relief that the Court deems appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Respectfully submitted,

*/s/ Randall L. Rhodes*
Randall L. Rhodes     KS #15811
Rachel N. Boden       KS #26238
ROUSE FRETS WHITE GOSS
GENTILE RHODES, P.C.
5250 W. 116th Place, Suite 400
Leawood, Kansas 66211
P: (913) 387-1600
F: (913) 928-6739
rrhodes@rousepc.com
rboden@rousepc.com

*Attorneys for plaintiffs*

34